[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was brought by the plaintiff wife against the defendant CT Page 5170 husband for dissolution of their marriage on the ground of irretrievable breakdown. The parties were married on October 28, 1972 in Hanover, New Hampshire. There are two children issue of this marriage, both of whom have reached the age of majority; Alexander Hamlin, born February 23, 1981, a junior at Dartmouth College, and Benjamin Hamlin, born February 28, 1983, a freshman at Harvard College.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief, proposed orders and trial memoranda.[1]
Based upon the evidence, the court makes the following findings. This action was commenced on or about May 12, 2000. The court has jurisdiction and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
The plaintiff graduated from Harvard College in 1972 and Boston University School of Law in 1977. She is licensed as an attorney in the State of Massachusetts, 51 years of age, and in generally good health. The defendant graduated from Harvard College in 1970 and Harvard Business School in 1978. The defendant is 53 years of age and in excellent health. At the time of their marriage, October 28, 1972, neither party had any significant assets.
In 1979, the plaintiff began her legal career as an associate with a Boston law firm. After a period working in a variety of fields of law, she specialized in and limited her work to representation of clients in the hydroelectric field. In 1973 she opened her own firm with this specialization and continued working until she moved to Connecticut in 1996. Her annual earnings, from 1990 through 1996, as a sole practitioner, never exceeded $19,000.00. This was due, in part, to her limited work hours and to the significant attention she gave to the care of her children.
The defendant, between 1974 and 1979, was employed by Hood Sail Makers in Marblehead, Massachusetts. He entered Harvard Business School in 1976 and graduated in 1978. Thereafter, until 1992, he worked as a consultant with a marketing firm. He was employed by Harvard Business School Publishing from 1992 until 1994, and then by Lotus Development Corporation until 1995. In 1996, the defendant was hired by N.F. Lowell Research Company in Greenwich, Connecticut.
In 1974 the parties purchased a two family house in Massachusetts. They each used a few thousand dollars from their own savings and the CT Page 5171 plaintiff's father contributed approximately $5,000.00. This house was sold in 1979 and, using the proceeds of the sale and funds from a first mortgage, the parties purchased a home in Beverly, Massachusetts for approximately $155,000.00. In 1996, when the defendant located a new and lucrative employment opportunity, the family moved to Connecticut. The plaintiff opposed the move and her attitude and behavior made the move more difficult. At the time of this sale, the Beverly home was mortgage free, and the parties received approximately $408,000.00. With these proceeds and a new mortgage, the parties purchased a home in Southport for approximately $800,000.00.
Between 1998 and 1999, approximately $400,000.00 of renovations were done to the Southport home. These improvements were paid for, primarily, from the defendant's earnings.
After the move to Connecticut, the plaintiff ceased working and directed her efforts primarily to yacht club activities, work for a neighborhood association, and to the town library and Women's Exchange. The defendant, working at his new position, earned approximately $400,000.00 in 1998, $502,000.00 in 1999, and $395,000.00 in 2000. In March, 2001 the defendant's employment at NFO Research was terminated, and thereafter he was retained for his first independent consulting assignment with Van Wagner Communications. He soon became its full-time marketing executive, and, in September, 2001, the CEO of Van Wagner, U.K. When appointed CEO, he moved to London, England.
Between 1992 and 1995, the plaintiff received funds from her family including:
 1) approximately $758,000.00 from proceeds of a trust established by her father and bonds gifted by her mother; and
 2) approximately $122,000.00 now held in a Franklin Federal Tax Free account and in a Vanguard Index Account.
In addition, she maintains a Putnam Trust account containing income from various of her other accounts, bonds an dividends, with a balance of approximately $44,000.00. The wife's family also established trust accounts to provide for the education of their children. There remains $70,000.00 in the account for Alexander and $120,000.00 in the account for Benjamin. Also, as a part of the plaintiff's inheritance, she received a 1/3 interest in two cottages built by her mother and father in Maine.
Although the plaintiff kept all of the funds she received from her family in accounts in her name alone, the defendant was aware of these CT Page 5172 accounts, and their existence affected and influenced their life stye and expenditures.
There were many causes of the dissolution of this marriage. The plaintiff resented the defendant's desire to have children at an early point in the marriage and his disregard for the effect this would have on her career. She was upset about the move from Massachusetts to Connecticut necessitated by defendant's job change and her feelings and behavior made the move difficult and placed a strain on the relationship. In addition, the parties had very different attitudes toward and outlook on life. The defendant was optimistic, adventurous, and wanted to pursue everything that life had to offer, while the plaintiff was cautious, conservative, and adverse to change or risk-taking. These differences resulted in tension and disagreements, which, together with an affair by the defendant ultimately let to the breakdown of the marriage. Both parties bear responsibility for this breakdown.
At present, the defendant has the greater income, and the greater ability and Opportunity for future acquisition of capital assets and income. The plaintiff does have the education, training, experience and vocational skills to enable her, following some time to locate a position, to earn income commensurate with her professional degree.
The defendant, as CEO of Van Wagner, U.K., receives $495,098.00 annual compensation as follows: Van Wagner Salary of $35,000.00, Van Wagner U.K. salary of $191,000.00, 2002 guaranteed bonus of $100,000.00, tax reimbursement of $42,114.70 living allowance of $96,000.00, car allowance of $24,600.00, and commutation subsidy of $6,384.00. The net monthly amount available from the defendant's employment is salary of $20,266.50, and $10,582.00 for housing allowance, car allowance, and commutation allowance. In addition, the defendant's employment contract provides that 10% of his U.K. compensation be put into a private pension fund, and, although this contribution has yet to take place, it is probable that it will be made. As part of his employment package, his employer also provided him with a $145,000.00 interest free loan, without a repayment schedule, for his purchase of a 5% interest in the company which has been accomplished. No evidence was presented as to the present value of these shares. This benefit provides an incentive for the defendant to make the company prosper, thereby increasing the value of his interest. This interest amounts to more than a mere expectancy. As inBornemann v. Bornemann, 245 Conn. 508, 510 (2001), the defendant would have a cause of action for breach of contract were his employer to attempt to revoke this interest from or deny this interest to the defendant. This interest is presently existing and is "property" within the broad definition of § 46b-81. CT Page 5173
ORDERS:
The Court has carefully considered the criteria set forth in General Statutes § 46b-81 and 46b-82 and the applicable case law in reaching the decisions reflected in the orders that follow:
 1) The marriage of the parties, having broken down irretrievably, is hereby dissolved.
 2) Alimony — for a period of two years from the date of this decision, the defendant shall pay to the plaintiff as alimony the sum of $13,000.00 per month. Said payment shall terminate upon the earliest of the following events: the death of either party, the plaintiff's remarriage, or statutory cohabitation as per Connecticut General Statute § 46b-86 (b), whichever shall first occur. If, a terminating event shall not have occurred prior to the end of said two year period, the defendant shall, thereafter, pay to the plaintiff as alimony the sum of $10,000.00 per month until the death of either party, the wife's remarriage, or her statutory cohabitation in accordance with the meaning of Connecticut General Statute § 46b-86 (b), whichever shall first occur.
3) Property Division
 A. Real Property — the jointly owned real property located at 298 Harbor Road, Southport, Connecticut shall be sold immediately.
 1. Property shall immediately be listed for sale with a broker/listing agent and at a listing price mutually agreeable to the parties. If the parties cannot agree upon a broker, the court shall appoint the same. If the parties cannot agree upon a listing price, the parties shall, each, at their own expense, select a broker/listing agent who will each then select a third listing agent who shall set the initial price and list the property for sale. CT Page 5174
 2. The parties shall accept any offer within 5% of the listing price. Until a sale, the listing price shall be reduced 2 1/2% every 45 days unless both parties otherwise agree. Both parties must agree before accepting any offer more than 5% below the listing price.
 3. The wife may continue to reside in the home until the sale and shall have exclusive possession of the residence. Until the sale, the wife shall be responsible for payment of the mortgage, real estate taxes, homeowners' insurance, maintenance, refuse collection, and repairs. In the event of any extraordinary repair, i.e., any repair item the cost for which is in excess of $500.00, the parties shall equally share cost of said items.
 4. On closing of the sale, the proceeds of the sale shall be divided as follows:
 a. The balance on the existing first mortgage shall be paid;
 b. Real estate brokers commissions shall be paid;
 c. Reasonable attorneys fees and disbursements including real estate conveyance taxes incident to the sale shall be paid;
 d. The net proceeds, after payment of the above items, shall be divided 42% to the wife and 58% to the husband.
 e. Any capital gains taxes associated with the sale of the residence shall be proportionately divided between the parties in accordance with their receipt of proceeds.
 f. The court shall retain jurisdiction over CT Page 5175 the sale of the property to ensure compliance with above and to resolve any disputes arising from this order.
A. Other Assets
 1. The following assets, presently held in the wife's name shall remain the wife's property free of any claim by the husband;
a. People's Bank checking account #003-0046757
b. Putnam Trust savings account #648-0082342
c. Fidelity cash reserves
d. Advest account #327-00538
e. Franklin Federal account #116-11622602089
f. Vanguard 500 Index account #013119686
g. Interest in Maine cottage,
h. Fidelity IRA,
i. Fidelity SEP IRA
 2. The following assets held in the husband's name shall remain the property of the husband free of any claim by the wife:
a. Fidelity 401(k)/IRA
 b. Receivables, if any, from Van Wagner UK for outstanding benefits;
c. Marsh McLennon shares;
 d. Shares representing 5% interest in Van Wagner, UK.
e. Fleet Checking account #9433346788
 3. Fidelity account #x57223182, held in the husband's name, shall be divided 40% to the wife CT Page 5176 and 60% to the husband.
 4. The following assets shall be divided 50% to the husband and 50% to the wife:
a. Fidelity Account T 006051243
b. March McLennon shares held in joint name
c. Vessted and un-vested Crestone options
d. Nat West Onshore account
 e. Husband's MMC 401(k), MMC pension plan, IBM TDSP 401(k), NFO 401(k) Profit Sharing plan' and pension and deferred compensation plan. These retirement assets shall be divided pursuant to qualified domestic relations orders, as appropriate, with each party receiving one half (1/2) of each asset or benefit as of the date of the division. The Court shall retain jurisdiction with regard to the same.
5. Life insurance policies
 As security for her alimony, for so long as the plaintiff is still receiving alimony the husband shall maintain in full force and effect the following presently existing policies, listed on his financial affidavit, with the wife as sole beneficiary: NML policy #8176051 with face amount of $75,022.00, NML policy #6640664 with face amount of $72,326.00, NML term policy with face amount of $125,000.00, and employer provided term insurance, with face amount of $35,000.00. The defendant shall not borrow any amount available from NML policies #8176051 and 6640664.
 6. Medical Insurance — The husband shall cooperate in connection with converting the wife's group coverage to individual coverage under COBRA.
 7. Automobiles — the wife shall have all CT Page 5177 right, title and interest in the 1994 Volvo Turbo wagon and the 1998 Subaru Outback wagon free from any and all claims by the husband. The husband shall execute any documents necessary to transfer title to both said vehicles to the wife.
 8. Other items of personal property: The husband and wife shall mutually agree on the distribution between them of other items of personal property including boats, jewelry, silver, china, furnishings, artwork, valuables, frequent flyer miles and other possessions. Any disputes arising from this order shall be referred to Family Relations for mediation. The court shall retain jurisdiction over the distribution ordered in this subparagraph in the event mediation by Family Relations fails.
 9. Attorneys' Fees — the husband shall pay to the wife the sum of $20,000.00 towards the wife's attorney's fees.
HILLER, J.